UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GUADALUPE GUERRERO,                    )     Case No. EDCV 06-0649-JTL
                                       )
              Plaintiff,               )
                                       )
         v.                            )     MEMORANDUM OPINION AND ORDER
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security,                              )
                                       )
              Defendant.               )
_____    )

**PROCEEDINGS**

On June 28, 2006, Guadalupe Guerrero ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits. On September 20, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on December 21, 2006, defendant filed an Answer to Complaint. On March 16, 2007, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

1                                    **BACKGROUND**

2        On  September  4,  2002,  plaintiff  filed  an  application  for

3   disability  insurance  benefits.[1]  (Administrative  Record  ["AR"]  at  88-

4   90).   In  her  application,  plaintiff  claimed  that,  beginning  on

5   September  16,  2001,  headaches  and  impairments  in  her  hands,  eyes,  and

6   chest  prevented  her  from  working.   (AR  at  130).   The  Commissioner

7   denied  plaintiff's  application  for  benefits  both  initially  and  upon

8   reconsideration.   (AR  at  26-27,  32-35,  39-43).   Thereafter,  plaintiff

9   requested  a  hearing  before  an  Administrative  Law  Judge  ("ALJ").   (AR

10  at  44).

11       On  December  14,  2004,  the  ALJ  conducted  a  hearing  in  San

12  Bernardino,  California.   (AR  at  322-60).   Plaintiff  appeared  at  the

13  hearing  with  counsel  and  testified.   (AR  at  324-47).   John  Morse,  a

14  medical  expert,  and  Sandra  Fioretti,  a  vocational  expert,  also

15  appeared  and  testified.   (AR  at  347-51,  351-58).   A  Spanish  language

16  interpreter  was  also  present.   (AR  at  322).

17       On  May  13,  2005,  the  ALJ  issued  his  decision  denying  benefits.

18  (AR  at  16-24).   In  his  decision,  the  ALJ  concluded  that  plaintiff

19  suffered  from  the  severe  impairment  of  congenital  anomaly  of  the

20  cerebellum.   (AR  at  23).   According  to  the  ALJ,  however,  this

21  impairment  did  not  meet  or  equal  any  of  the  criteria  contained  in  the

22  Commissioner's  Listing  of  Impairments,  20  C.F.R.  Section  404,  Subpart

23  P,  Appendix  1.   (Id.).   The  ALJ  further  found  that  plaintiff's

24  allegations  regarding  her  limitations  were  not  totally  credible.

25  (Id.).   The  ALJ  concluded  that,  based  upon  her  residual  functional

26  _____

27        [1]  On  March  1,  2002,  plaintiff  filed  an  application  for
    disability  insurance  benefits,  which  was  denied  without  further
28  appeal.   (AR  at  81-83,  25,  28-31).

capacity, plaintiff retained the capacity to perform a significant range of light work, such as the work of a cleaner, cafeteria attendant, and bench assembler. (AR at 23). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On May 27, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 11). On April 20, 2006, the Appeals Council affirmed the ALJ's decision. (AR at 6-8).


## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims in the Joint Stipulation:

1.   The ALJ improperly determined that plaintiff retained the residual functional capacity to perform light work or work at any level of exertion on a sustained basis.

2.   The ALJ failed to properly evaluate plaintiff's impairment.

3.   The ALJ failed to properly develop and consider plaintiff's testimony.

4.   The ALJ improperly relied on the testimony of the vocational expert.


## STANDARD OF REVIEW

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance.

1  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Desrosiers v.</u>

2  <u>Secretary of Health & Human Servs.</u>, 846 F.2d 573, 575-76 (9th Cir.

3  1988).

4      Substantial evidence is "such relevant evidence as a reasonable

5  mind might accept as adequate to support a conclusion." <u>Richardson</u>,

6  402 U.S. at 401.   This Court must review the record as a whole and

7  consider adverse as well as supporting evidence.  <u>Green v. Heckler</u>,

8  803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible

9  of more than one rational interpretation, the ALJ's decision must be

10  upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

11

12                          **DISCUSSION**

13  **A.    The Sequential Evaluation**

14      The Commissioner has established a five-step sequential process

15  for determining whether a claimant is disabled.   20 C.F.R. §§

16  404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42

17  (1987).   At step one, disability benefits are denied if the

18  Commissioner determines that the claimant is engaged in substantial

19  gainful activity.   <u>Id.</u> at 140.   At step two, the Commissioner

20  evaluates whether the claimant has a medically severe impairment which

21  significantly limits his physical or mental ability to do basic work

22  activities.   <u>Id.</u> at 140-41.  Step three requires a consideration of

23  whether the claimant's impairment is equivalent to one of a number of

24  listed impairments that are so severe as to preclude substantial

25  gainful activity.  <u>Id.</u> at 141.  If the impediment meets or equals one

26  of the listed impairments, the claimant is presumptively disabled.

27  <u>Id.</u>  If the impairment is not one that is conclusively presumed to be

28

                                  4

disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Bowen</u>, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. <u>Id.</u> at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. <u>Id.</u>

**B.    <u>The ALJ's Evaluation of Plaintiff's Testimony</u>**

Plaintiff contends that the ALJ improperly rejected plaintiff's testimony regarding her functional limitations. The ALJ found plaintiff's subjective complaints to be disproportionate to her ability and not totally credible. (AR at 21). In support of his decision, the ALJ cited to plaintiff's use of only one medication, the absence of surgical intervention in her treatment, the absence of a need for assistive devices, plaintiff's activities of daily living, and the lack of objective findings with respect to plaintiff's vision problems, notwithstanding her significant complaints. (AR at 20).

At the hearing, plaintiff testified to numerous impairments. First, plaintiff stated that her vision is constantly blurred and she cannot "see straight." (AR at 329, 334-35). Plaintiff also testified that she suffers from fatigue, dizziness, and headaches. (AR at 330-31). Plaintiff testified that her headaches are so severe that she needs to lie down for two hours everyday and, once every two weeks, she is incapacitated for the entire day. (AR at 344-45). The ALJ found plaintiff's complaints to be "not totally credible" and concluded that she retained the residual functional capacity to

perform light work with the need to avoid exposure to unprotected heights, hazardous machinery, and/or commercial use of a motor vehicle.  (AR at 21).

An ALJ need not believe every allegation of disabling pain.  See Ortega v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Where an ALJ finds a claimant's claims of disabling pain not entirely credible, and there is no evidence of malingering, the ALJ must set forth legally permissible, specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings") (citations omitted).  "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Morgan v. Commissioner of the Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Furthermore, "[i]t's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."  Dodrill, 12 F.3d at 918 (citing Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988), rev'd on other grounds upon reh'g, 859 F.2d 1396 (9th Cir. 1988)).  An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary.  Bunnell v. Sullivan, 947 F.2d 341, 345-56 (9th Cir. 1991).

///

As discussed below, the ALJ's reasons for rejecting plaintiff's credibility do not withstand scrutiny.

### 1.   Plaintiff's Medical Treatment

The ALJ found plaintiff to be not fully credible, in part, due to her use of only one medication, the absence of any surgical intervention in her treatment, and her lack of need for an assistive device.  (AR at 20).  As discussed below, the ALJ's determination does not withstand scrutiny.

### a.   Lack of Medications

First, the ALJ found that plaintiff took only one medication with good results and no significant adverse side effects.  (AR at 20).  An ALJ may reject a claimant's allegations of disabling pain where the patient uses only mild medications.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject patient's credibility and noting that plaintiff "has not required prescription pain medication"); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility and noting pain did not require prescription medications); Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting plaintiff's credibility and stating, "More particularly, [the ALJ] remarked that [plaintiff] had not been prescribed narcotic pain medication, as would be expected if she suffered from intense, chronic pain."); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993) (permissible credibility factors include limited treatment and minimal use of medications).

The record in this case establishes that plaintiff has taken a number of prescription medications.  In a Disability Report dated September 2, 2002, plaintiff reported taking Naprosyn, Zomig, and

Amitriptyline. (AR at 135). On November 7, 2002, plaintiff reported taking Tylenol and Amitriptyline. (AR at 209). In a statement filed concurrently with plaintiff's request for a hearing before an ALJ,[2] plaintiff reported taking Amitriptyline, Zomig, and Motrin. (AR at 151). Treatment records reported that plaintiff used Elavil and Motrin on February 20, 2004 and Naproxen on August 30, 2004. (AR at 301, 292). On November 19, 2004, plaintiff's treating physician reported that she took 300 mg of Neurontin daily. (AR at 272). On December 14, 2004, plaintiff reported taking Gentamicin Sulfate drops, Hydrocodeine, and Cephalexin. (AR at 152). Finally, at her most recent examination on February 7, 2005, the examining physician reported that plaintiff's only medication was Notriptyline.[3] (AR at 312).

The ALJ relied on the February 7, 2005 report regarding plaintiff's medications to reject her credibility. The record, however, contains many instances where plaintiff was taking numerous prescription medications concurrently. Furthermore, less than two months prior to the February 7, 2005 report on which the ALJ relied, plaintiff reported taking Gentamicin Sulfate drops, Hydrocodeine, and Cephalexin for her impairments. (AR at 152). Given plaintiff's

---

[2]   Plaintiff's Request for Hearing by Administrative Law Judge was received by the Social Security Administration on April 4, 2003. (AR at 44).

[3]   Notriptyline is "used to treat mental/mood problems such as depression. It may help improve mood and feelings of well-being, relieve anxiety and tension, help [a patient] sleep better, and increase [his or her] energy level."
See http://www.webmd.com/drugs/index-drugs.aspx (search "Find A Drug, By Name" for "Notriptyline"; follow "Notriptyline Oral" hyperlink; then follow "Uses" tab).

history of multiple prescription medications, the Court finds that the ALJ's rejection of plaintiff's credibility based on her lack of medications is insufficient.

### b.  Lack of Surgical Intervention

The ALJ also cited plaintiff's lack of surgical intervention as a reason to reject her credibility. (AR at 20). An ALJ may rely on a plaintiff's conservative treatment regimen to reject a plaintiff's testimony of disabling limitations or disabling pain. Fair v. Bowen, 885 F.2d at 604. For example, in Fair v. Bowen, the Ninth Circuit affirmed an ALJ's credibility decision where the ALJ stated, among other things, that the claimant received only minimal conservative treatment for his various complaints. Id. The Ninth Circuit, however, also noted that a plaintiff could overcome an ALJ's credibility decision by offering a credible explanation about the lack of more serious treatment. See id. ("While such reasoning may not hold up in all cases (there may be claimants with good reasons for not seeking treatment and credible explanations for their ability to work inside but not outside the home), it is sufficient here, as Fair has not put forward any evidence that reconciles the inconsistency between his words and his actions."); see also Smolen, 80 F.3d at 1284 (evidence of good reason existed where claimant had no insurance and could not afford treatment); see also 20 C.F.R. § 404.1530 (listing acceptable reasons for failure to follow prescribed treatment).

Here, the Court finds the lack of surgical intervention in plaintiff's treatment record to be an insufficient reason for rejecting her credibility. Plaintiff filed her application for disability based on headaches and pain in her hands, eyes, and chest.

(AR at 130).   Records indicate that plaintiff took numerous prescription medications as noted in the prior section, underwent Magnetic Resonance Imaging tests of her brain and cervical spine (AR at 244-46, 303-09), and consulted specialists in the field of neurology (AR at 193-94, 311-14).   Furthermore, plaintiff testified at the hearing that an ophthalmologist excised lower eye lesions on or about December 7, 2004 and her medical records indicate that such procedure was previously performed in 2003.   (AR at 336-37, 291).  Such an excision is surgical in nature.[4]   Given the combination of these multiple treatments, including the excision of the lesion, the Court finds that the ALJ erred in rejecting plaintiff's credibility based on the lack of surgical intervention.

### c.   Lack of Assistive Device

Finally, the ALJ's citation to plaintiff's lack of need for an assistive device is not a valid reason for rejecting her credibility. An ALJ may consider "all of the available evidence" to evaluate the intensity and persistence of symptoms in evaluating a claimant's credibility.   20 C.F.R. § 416.929(a).   But "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."   20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00B(2)(b).   As such, the fact that plaintiff did not require an assistive device does not detract from her credibility.

///

---

[4]   Plaintiff's medical record describes the excision of the eyelid lesion as surgery.   (AR at 278).   Another record referring to the scheduled excision of the lesion mentions various "pre op" procedures.   (AR at 277).

## 2. Activities of Daily Living

The ALJ found that plaintiff's ability to perform activities of daily living detracted from her credibility with respect to her disabling impairments. (AR at 20). Specifically, the ALJ noted that plaintiff got her children ready for school, performed light household chores, attended church weekly, and used bus transportation without difficulty. (Id.). As such, the ALJ rejected plaintiff's testimony that she suffered from a disabling condition.

In evaluating a claimant's credibility, an ALJ must consider the factors that Social Security Regulation 95-5p sets forth. Those factors include the claimant's daily activities and the adjudicator's personal observation of the claimant. See SSR 95-5p. "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan, 169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In Fair, however, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair, 885 F.2d at 603.

While plaintiff testified that she performs light housework, the ALJ's claims that plaintiff got her children ready for school, attended church weekly, and used bus transportation without difficulty do not completely characterize her testimony. At the hearing,

plaintiff testified that she woke her children up, prepared their meals, and sometimes walked them to school two blocks away. (AR at 339). Plaintiff explained that sometimes she is unable to walk the children to school and that her neighbor will take the children to school. (AR at 339-40). Plaintiff further testified that while she attends church weekly, plaintiff's husband drives her to church, suggesting that she cannot perform this activity independently. (AR at 341). Finally, plaintiff testified that she will not take public transportation by herself, as she has tripped and lost her balance in the past. (AR at 342-43). As such, the Court finds that the ALJ inaccurately stated that plaintiff uses "bus transportation without difficulty." (AR at 20). Overall, the Court finds that plaintiff requires assistance to perform some of the activities of daily living cited by the ALJ.

Even assuming that plaintiff could get her children ready for school, perform light chores, attend church weekly, and take bus transportation without difficulty, the ability to engage in such activities does not support the ALJ's decision to reject plaintiff's credibility that she is disabled. Taking the bus or performing intermittent and light chores does not clearly translate into the ability to work. The Ninth Circuit has found that similar activities, such as limited walking for exercise, do not "in any way detract from [a claimant's] credibility as to [his] overall disability." Vertigan, 260 F.3d at 1050; see also Howard v. Hecklar, 782 F.2d 1484, 1488 (9th Cir. 1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic travel). The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to

12

be disabled.  <u>See</u> <u>Fair</u>, 885 F.2d at 603 ("The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits."); <u>see also</u> <u>Vertigan</u>, 260 F.3d at 1050 ("One does not need to be utterly incapacitated in order to be disabled."). As such, substantial evidence does not exist to support the ALJ's finding that plaintiff's alleged ability to engage in daily activities rendered her testimony not credible.

In sum, the ALJ does not present substantial evidence to support his determination that plaintiff's testimony regarding her functional limitations was not credible by virtue of her alleged ability to engage in a daily routine.

**3.  Absence of Findings Regarding Plaintiff's Vision Problems**

Plaintiff cited to vision problems in her application for benefits.  (AR at 130).  At the hearing, plaintiff stated that her vision is constantly blurred and that she cannot "see straight." (AR at 329, 334-35).  As noted in the prior section, plaintiff also testified that she has lost her balance and tripped.  (AR at 342-43). The ALJ cited to plaintiff's lack of prescription eyeglasses and the result of her vision tests as reasons to conclude that plaintiff's subjective complaints were disproportionate to her alleged impairment. (AR at 20-21).

An ALJ, however, cannot rely on an absence of disability findings to reject a plaintiff's credibility.  A claimant need not produce evidence of pain other than his own subjective testimony.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof.").  Nor must a claimant present objective

medical evidence of a causal relationship between the impairment and the type of symptom.  See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain.").  Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted).  This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual."  Id. (internal quotations omitted).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  Social Security Ruling ("SSR") 96-7p.[5]  Instead, a claimant must demonstrate only two things:  "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could ///

---

[5] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  reasonably be expected to (not that it did in fact) produce some

2  degree of symptom." SSR 96-7p; see also SSR 96-3p.

3       In this case, the ALJ found that plaintiff's testimony regarding

4  her vision impairments was not totally credible because of plaintiff's

5  essentially normal test results and plaintiff's lack of need for

6  prescription eyeglasses. (AR at 20). Here, physician reports

7  indicated that plaintiff suffered from a right eyelid lesion. (AR at

8  277, 278, 279, 291). Plaintiff's treating physicians referred her to

9  an ophthalmologist. (AR at 279). An ophthalmology record dated

10 September 15, 2004 indicated that plaintiff underwent an excision a

11 year prior and the lesion "came back again" and was bigger. (AR at

12 291). Plaintiff testified that she underwent a procedure to excise

13 the eye lesion that was scheduled for December 7, 2004. (AR at 336).

14 Plaintiff was also prescribed Gentamicin Sulfate eye drops. (AR at

15 152). Thus, unless there is affirmative evidence showing that the

16 plaintiff is malingering, the Commissioner's reasons for rejecting the

17 claimant's testimony must be "clear and convincing." Lester, 81 F.3d

18 at 834.

19      Here, the ALJ's reasons are not clear and convincing.

20 Plaintiff's impairments could reasonably produce the symptoms about

21 which plaintiff complains. The ALJ noted plaintiff's Visual Acuity

22 Test on February 7, 2005 which indicated that her vision was 20/40 on

23 the right, 20/50 on the left, and 20/25 bilaterally. (AR at 20, 315).

24 On September 15, 2004, an ophthalmologist examined plaintiff and

25 reported similar vision test results. (AR at 291). The same

26 ophthamologist, however, noted plaintiff's eye lesion had returned and

27 was bigger now and referred her to an ocular plastic surgeon for a

28

biopsy.  (AR at 291).  Moreover, at the hearing, the medical expert, John Morse, M.D., testified that based on a previous MRI, plaintiff had a degenerative pathology going on in her cerebellum and brainstem, which could result in some visual disturbance referred to as nystagmus.[6]  Thus, the mere fact that plaintiff did not wear prescription eyeglasses or that the result of her vision tests appeared to be normal do not clearly discredit plaintiff's testimony regarding problems that she has having with her vision.  Accordnigly, the Court finds that the ALJ erred in rejecting plaintiff's credibility on this issue.

**C.**   **Remand is Required to Remedy Defects in the ALJ's Decision**

     The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  Id. at 603; Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).  An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), or where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000).

---

     [6] "Nystagmus" is defined as an "[i]nvoluntary rhythmic oscillation of the eyeballs, either pendular or with a low and fast component."  Stedman's Medical Dictionary 1246 (27th ed. 2000).

Here, the Court finds remand appropriate.  The reasons cited by the ALJ in support of his rejection of plaintiff's credibility are insufficient.  On remand, the ALJ must provide clear and convincing reasons in support of his finding that plaintiff's allegations regarding her limitations are not totally credible.[7]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED:    April 20, 2007

_____/s/_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff raised other claims of error regarding the ALJ's decision, namely, that the ALJ improperly determined that plaintiff retained the residual functional capacity to perform light work; the ALJ failed to properly evaluate plaintiff's impairment; and the ALJ improperly relied on the testimony of the vocational expert.  As explained above, the ALJ's error in assessing plaintiff's credibility constitutes sufficient reason to remand this case.  Depending on the outcome of the proceedings on remand, the ALJ should address plaintiff's remaining issues at that time.